Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel II

| | | |
|---|---|---|
| HÉCTOR JAIME BENERO RAMOS<br>Recurrido<br><br>v.<br><br>ENRIQUE MANGUAL FLORES y OTROS<br>Demandados<br><br><br>EMPRESAS Y-NUINA, INC.<br>Peticionaria | KLCE202301217 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Carolina<br><br>Caso Núm. CA2018CV02004<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

Adames Soto, Juez Ponente

## **SENTENCIA**

En San Juan, Puerto Rico, a 3 de abril de 2024.

Comparece Empresas Y-Nuina Inc. (Y-Nuina o la peticionaria), mediante recurso de *certiorari*, solicitando la revisión de una *Resolución* emitida por el Tribunal de Primera Instancia (TPI), el 5 de octubre de 2023. En el contexto de una acción por daños y perjuicios instada por el recurrido de epígrafe en contra de Y-Nuina, mediante dicho dictamen interlocutorio el foro primario decidió denegar una *Moción de sentencia sumaria* presentada por esta última.

No obstante, juzga Y-Nuina que el foro recurrido se equivocó en las determinaciones de hechos que alcanzó en la referida *Resolución,* y al no ordenar la desestimación de la demanda.

Examinada la moción dispositiva aludida, junto a la documentación que se le anejó, decidimos expedir el auto de *certiorari* solicitado, pero para el limitado propósito de modificar las

determinaciones de hechos enumeradas en la *Resolución* recurrida, y entonces así confirmarla.

## I. Resumen del tracto procesal

El 17 de agosto de 2018 Héctor Jaime Benero (el recurrido), presentó una *Demanda* por daños y perjuicios contra Enrique Mangual Flores y Empresas Y-Nuina. Alegó que, el 17 de agosto de 2017, se encontraba en la planta de Almacenes Kikuet y, mientras regresaba de su tiempo de descanso del estacionamiento de empleados, resbaló en una rampa que, al tratar de apoyarse y no encontrar una baranda de seguridad, cayó de espalda, lesionándose el pie derecho con una herida abierta, por la que recibió servicios médicos, descritos en la demanda. Aseveró, además, que la razón única y exclusiva de la caída fue la negligencia de Enrique Mangual Flores y las Empresas Y-Nuina, Inc., quienes eran los dueños y/o administradores del edificio Almacenes Kikuet, al mantener una rampa con hongo, sin barandas de seguridad, ni antideslizantes, poniendo en peligro su seguridad y vida. Estimó los daños físicos y emocionales sufridos en más de $60,000.

Por su parte, la Corporación del Fondo del Seguro del Estado (CFSE) compareció ante el TPI el 5 de septiembre de 2018, solicitando la intervención, subrogación y la paralización de los procedimientos. En síntesis, este adujo que el accidente descrito en la demanda era uno relacionado al trabajo, por tanto, dentro de su jurisdicción, teniendo derecho prioritario en el recobro de dinero público por gastos incurridos en el trámite, tratamiento y compensación que le brindó al empleado lesionado.

En respuesta a la solicitud de la CFSE, el 6 de septiembre de 2018, el foro primario emitió una *Sentencia de Paralización* de los procesos.

Posteriormente, habiendo determinado el TPI continuar los procesos en este caso, pues habían concluidos los asuntos que se

estaban atendiendo ante la CFSE, dicho foro primario atendió varios temas interlocutorios, entre estos, una petición de desestimación promovida por Y-Nuina, que resultó denegada.

Entonces, el 21 de abril de 2022, la peticionaria presentó su *Contestación a la Demanda.* En lo pertinente, esta parte admitió ser la propietaria del edificio descrito en la demanda, pero adujo haberla cedido en arrendamiento a Century Frozen Foods, LLC., quien, por disposición contractual, mantenía el control y mantenimiento del lugar donde se alegó que ocurrió la caída. En la misma tónica, afirmó que no era la encargada de mantener en buen estado de limpieza y conservación el lugar del incidente, por lo que no se le podía imponer responsabilidad por los actos alegados. Añadió que la condición de peligrosidad fue ocasionada por terceras personas, sobre las cuales no tenía control, y no fue advertida y/o notificada de dicha situación, ni había transcurrido el tiempo suficiente para que llegara a su conocimiento.

Luego, el recurrido presentó una *Demanda Enmendada,* a los fines de añadir como codemandada a Century Frozen Foods, LLC.

El 12 de mayo de 2023, Y-Nuina presentó la *Moción de Sentencia Sumaria* solicitando que se desestimara la causa de acción dirigida en su contra. A estos fines, dicha parte enumeró ocho hechos, calificándolos de esenciales e incontrovertidos, citando e incluyendo la prueba documental que, propuso, los sostenían. Luego de lo cual arguyó que, según el contrato de arrendamiento anejado, el mantenimiento de la rampa objeto del caso estaba bajo el control y jurisdicción del patrono del demandante en la fecha del incidente, Century Frozen Foods, LLC, quien como arrendatario había asumido la obligación de que dicho lugar estuviera en buen estado de limpieza y conservación. En definitiva, sostuvo que la prueba documental anejada disponía de la causa de acción dirigida en su

contra, pues establecía que la obligación de mantener el área donde alegadamente ocurrió el incidente le correspondía a la arrendataria.

A raíz de ello, el 20 de julio de 2023, el recurrido presentó su *Oposición a Moción de Sentencia Sumaria.* En esta identificó dos hechos que, presuntamente, no estaban en controversia, aunque para establecerlos solo aludió a las alegaciones contenidas en la demanda, (no incluyó prueba documental a esos propósitos). De igual manera, enumeró un solo hecho que presuntamente se mantenía en controversia, sin tampoco incluir evidencia documental para sostenerlo. No obstante, citando el propio contrato de arrendamiento que incluyó el peticionario en la *Moción de sentencia sumaria,* arguyó que de sus cláusulas surgía la obligación de Y-Nuina como arrendadora de mantener a su cuenta y cargo el techo, las paredes exteriores, la fundación y los demás elementos estructurales del lugar arrendado en buen estado. A partir de lo cual, concluyó que no cabía duda de que la rampa exterior era un elemento estructural de las facilidades de Y-Nuina, la cual estaba parcialmente expuesta, carecía de pasamanos en uno de los laterales, desprovista de antideslizantes, lo que la hacía peligrosa. Sobre el mismo tema continuó argumentando que dicha rampa se encontraba expuesta a la lluvia, lo que hacía previsible que fuera altamente peligrosa, se podía caer una persona, más aún cuando carecía de antideslizantes y pasamanos, conociendo la peticionaria las actividades que allí se llevaban a cabo, pero no las tenía aptas para los proveedores y clientes. Es decir, adujo que el contrato de arrendamiento incluido por Y-Nuina en la *Moción de sentencia sumaria* la hacía responsable del mantenimiento de la rampa donde aconteció la caída.

A los pocos días, la parte peticionaria presentó una *Réplica* a la *Oposición a Sentencia Sumaria.* En esencia, fueron alzados dos argumentos en dicho escrito: (1) que la *Oposición a Moción de Sentencia*

*Sumaria* no cumplía con los requisitos que impone la Regla 36.3(b)(2) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b)(2); (2) que en la *Moción de Sentencia Sumaria* se había establecido, sin lugar a dudas, que el nexo causal de la caída se debió a una sustancia babosa imperceptible a la vista en la rampa, no siendo responsabilidad de Y-Nuina, Inc. su mantenimiento ni limpieza.

Es así como, el 5 de octubre de 2023, el TPI emitió la *Resolución* cuya revocación nos solicita Y-Nuina. Según indicamos, mediante dicho dictamen el foro recurrido declaró *No Ha Lugar* la *Moción de Sentencia Sumaria* instada por Y-Nuina, al entender que persistían controversias sobre hechos materiales o esenciales que lo impedían. Además, identificó los siguientes hechos como incontrovertidos:

1. El 17 de agosto de 2017, el demandante, Héctor J. Benero Ramos, sufrió una caída mientras trabajaba para Century Frozen LLC, en la planta de Almacenes Kikuet ubicado en la Urbanización Industrial del Barrio Sabana Abajo en Carolina, PR.

2. Para dicha fecha, la propiedad donde operaba la referida planta era propiedad de Empresas Y-Nuina, Inc. y la misma constaba arrendada a Century Frozen Foods, LLC.

3. Para dicha fecha, el demandante, Héctor J. Benero Ramos, tomó un break de 10 minutos en su trabajo en horas de la mañana y fue a su vehículo a comer, el cual estaba estacionado en la parte posterior, cuando terminó de comer, comenzó a llover bien fuerte.

4. El demandante, Héctor J. Benero Ramos, para guarecerse y no mojarse tomó una rampa en la cual resbaló.

5. Cuando el demandante, Héctor J. Benero Ramos, estaba en el suelo, se percató que el mismo estaba bien baboso. La rampa parecía jabón y se resbaló en cuestión de segundos. Mientras el demandante, Héctor J. Benero Ramos, estuvo en el suelo, vio sus manos sucias.

6. El mantenimiento y limpieza de la propiedad donde ocurre la caída del demandante era obligación del arrendatario de la parte demandada, Empresas Y-Nuina, Inc.

7. El demandante sufrió fractura en el tobillo derecho que requirió de intervención quirúrgica.

Además, el foro recurrido desglosó el siguiente hecho como uno en controversia:

1. Si existe relación causal entre el acto o la omisión de un daño como consecuencia de dicho acto u omisión.

Inconforme, Y-Nuina acude ante este nosotros mediante recurso de *certiorari*, alzando los siguientes señalamientos de error:

Primero: Erró el TPI al resolver que existían controversias reales sobre "hechos materiales o esenciales", los cuales no estableció ni determinó, en contravención a la Regla 36.4 de Procedimiento Civil y la jurisprudencia interpretativa.

Segundo: Erró el TPI al establecer como "hechos en controversia" lo que dispone el Derecho en cuanto a la relación causal entre el acto o la omisión y la existencia de un daño, el cual le correspondía aplicar a las determinaciones de hecho, más no lo hizo.

Tercero: Erró el TPI al no aplicar ni adjudicar el Derecho a sus determinaciones de hechos y resolver que no procedía la desestimación del caso sumariamente.

Cuarto: Erró el TPI al no evaluar y adjudicar la Solicitud de Sentencia Sumaria de la Peticionaria de acuerdo al estándar establecido en la Regla 36 de Procedimiento Civil y su jurisprudencia interpretativa, cuando de la misma surgía evidencia de documentos, deposiciones y admisiones ofrecidas bajo juramento por el propio recurrido que demuestran que no hay controversia real sustancial en cuanto a que la Peticionaria no era la responsable del mantenimiento del área donde ocurre la caída y por consiguiente, de los daños reclamados.

## II. Exposición de Derecho

El propósito de las Reglas de Procedimiento Civil es proveer a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Roldan Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018); *Rodríguez Méndez et al. v. Laser Eye,* 195 DPR 769, 785 (2016), *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014). La sentencia sumaria hace viable este objetivo al ser un mecanismo procesal que le permite al tribunal dictar sentencia sobre la totalidad de una reclamación, o cualquier controversia comprendida en ésta, sin la necesidad de celebrar una vista evidenciaria. J. A. Echevarría Vargas,

*Procedimiento Civil Puertorriqueño*, 1era ed., Colombia, 2012, pág. 218. Procede dictar sentencia sumaria si "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia si las hubiere, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y pertinente y, además, si el derecho aplicable así lo justifica". *González Santiago v. Baxter Healthcare,* supra*; Roldan Flores v. M. Cuebas et al.,* supra; *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 225 (2015)*, SLG Zapata-Rivera v. J. F. Montalvo*, 189 DPR 414, 430 (2013). A su vez se recomienda, en aquellos casos en que el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012).

Por el contrario, no es "aconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor credibilidad es esencial y está en disputa". *Ramos Pérez v. Univisión*, 178 DPR 200, 219 (2010). Este mecanismo está disponible para la disposición de reclamaciones que contengan elementos subjetivos únicamente cuando no existan controversias de hechos esenciales y pertinentes. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018), *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 661 (2017), *Reyes Sánchez v. Eaton Electrical*, 189 DPR 586, 594-595 (2013), *Const. José Carro v. Mun. de Dorado*, 186 DPR 113, 129 (2012); *Ramos Pérez v. Univisión*, supra; *Abrams Rivera v. ELA*, 178 DPR 914, 933 (2010).

Así, la sentencia sumaria "vela adecuadamente por el balance entre el derecho de todo litigante a tener su día en corte y la disposición justa rápida y económica de los litigios civiles". *Const. José Carro v. Mun. de Dorado,* supra, en la pág. 130; *Mejías et al. v. Carrasquillo et al.,*

*supra*, en la pág. 300; *Ramos Pérez v. Univisión*, supra, a la pág. 220. Por lo tanto, el principio rector que debe guiar al juez de instancia en la determinación sobre si procede o no la sentencia sumaria es "el sabio discernimiento", ya que si se utiliza de manera inadecuada puede prestarse para privar a un litigante de su día en corte, lo que sería una violación a su debido proceso de ley. *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 327-328 (2013). Ello, pues la mera existencia de "una controversia de hecho es suficiente para derrotar una moción de sentencia sumaria... cuando causa en el tribunal una duda real y sustancial sobre algún hecho relevante y pertinente". *Pepsi-Cola v. Mun. Cidra et al.,* 186 DPR 713, 756 (2012). Se considera un hecho esencial y pertinente, aquél que puede afectar el resultado de la reclamación acorde al derecho sustantivo aplicable. *Ramos Pérez v. Univisión*, supra, pág. 213.

El tribunal procederá a dictar sentencia sumaria solo cuando esté claramente convencido que la vista evidenciaria es innecesaria. *Nissen Holland v. Genthaller,* 172 DPR 503, 511 (2007). La duda para impedir que se dicte sentencia sumaria no puede ser cualquiera, sino debe ser de tal grado que "permita concluir que hay una controversia real y sustancial sobre hechos relevantes y pertinentes". *Ramos Pérez v. Univisión*, supra, págs. 213-214.

Por otra parte, la Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R.36, establece de manera específica los requisitos de forma con los que debe cumplir la parte que promueve la moción de sentencia sumaria, así como la parte que se opone a ella. En lo pertinente, la parte promovente debe exponer un listado de hechos no controvertidos, desglosándolos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible que lo apoya. A su vez, la parte que se opone a la

moción de sentencia sumaria está obligada a citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100,137 (2015). La parte que se opone no puede descansar exclusivamente en sus alegaciones ni tomar una actitud pasiva. *Toro Avilés v. P.R. Telephone Co.*, 177 DPR 369, 383 (2009). Por el contrario, tiene que controvertir la prueba presentada por la parte solicitante, a fin de demostrar que sí existe controversia real sustancial sobre los hechos materiales del caso en cuestión. *González Aristud v. Hosp. Pavía*, 168 DPR 127 (2006).

Nuestro más alto foro ha manifestado que, "a menos que las alegaciones contenidas en la moción de sentencia sumaria queden debidamente controvertidas, éstas podrían ser admitidas y, de proceder en derecho su reclamo, podría dictarse sentencia sumaria a favor de quien promueve". *Meléndez González et al. v. M. Cuebas*, supra, pág. 137. Sin embargo, "toda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a la misma". *ELA v. Cole,* 164 DPR 608, 626 (2005).

**A. Función revisora del foro apelativo con respecto a la sentencia sumaria dictada por el foro primario**

En el caso de revisar sentencias del Tribunal de Primera Instancia dictadas mediante el mecanismo de sentencias sumarias o resolución que deniega su aplicación, nuestro Tribunal de Apelaciones se encuentra en la misma posición que el tribunal inferior para evaluar su procedencia. *Meléndez González et al. v. M. Cuebas*, supra. Los criterios a seguir por este foro intermedio al atender la revisión de una sentencia

sumaria dictada por el foro primario han sido enumerados con exactitud por nuestro Tribunal Supremo. *Íd.* A tenor, el Tribunal de Apelaciones debe:

1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;

2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

Además, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos maneras; (1) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia, (2) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González, et al. v. M. Cuebas*, supra. El primer punto se enfoca en que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Mientras que el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, pero no puede adjudicarlos. *Íd.* en la pág. 115. También, se ha aclarado que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. *Vera v. Bravo*, 161 DPR 308, 335 (2004).

### III. Aplicación del Derecho a los hechos

a.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, nos autoriza, en lo pertinente, revisar resoluciones u órdenes interlocutorias dictadas por el TPI, cuando se recurra de una denegatoria de una moción de carácter dispositivo. Precisamente, en el caso ante nuestra consideración se solicita que revisemos la denegatoria de una moción de sentencia sumaria, *ergo*, moción de carácter dispositivo. Habilitados para expedir el recurso de *certiorari* solicitado, procedemos a dirimir las controversias alzadas.

b.

Habiendo advertido en la exposición de derecho que la revisión de una denegatoria de moción de sentencia sumaria por este Tribunal de Apelaciones acontece *de novo,* debemos verificar inicialmente si las partes cumplieron con los requerimientos de forma que gobiernan a la petición de sentencia sumaria y el escrito que se presente oponiéndose a esta.

Con referencia a la *Moción de sentencia sumaria* instada por Y-Nuina, juzgamos que dio cumplimiento sustancial a la Regla 36.3(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(a). Al así manifestar, resaltamos que dicha parte incluyó una relación concisa y organizada en párrafos enumerados de los hechos que promovió como medulares e incontrovertidos, junto a la prueba documental con la cual pretendió dejarlos establecidos, para entonces discutir el derecho correspondiente, junto a la solicitud del remedio a ser concedido.

A *contrario sensu,* la *Oposición de sentencia sumaria* presentada por la parte recurrida no se atuvo a los requisitos que le impone la Regla 36.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 32.3(b). Llegamos a esta conclusión pues, según advertimos en el tracto procesal, en su

*Oposición a sentencia sumaria* el recurrido presentó dos hechos como incontrovertidos, pretendiendo fundamentarlos exclusivamente sobre las alegaciones de la *Demanda* presentada. Valga reiterar que *la parte que se opone **no puede descansar exclusivamente en sus alegaciones**.* (Énfasis provisto). *Toro Avilés v. P.R. Telephone Co.,* supra. Por el contrario, la parte que se opone a una petición de sentencia sumaria tiene que controvertir la prueba presentada por la parte solicitante, a fin de demostrar que sí existe controversia real sustancial sobre los hechos materiales del caso en cuestión. *González Aristud v. Hosp. Pavía*, supra. Es decir, si en el caso ante nuestra consideración la parte recurrida se proponía controvertir algunos de los hechos propuestos por Y-Nuina como incontrovertidos, estaba llamada a presentar las declaraciones juradas u otra prueba documental admisible que sirviera para esos propósitos, pero no lo hizo.

A pesar de lo que señalamos en el párrafo que antecede, debemos recordar que no oponerse a la solicitud de sentencia sumaria no supone que necesariamente se dicte sentencia a favor de su promovente. Ver, *Rosado Reyes v. Global Healthcare Group*, 205 DPR 796, 808 (2020.) En este sentido, el solo incumplimiento del recurrido al no presentar prueba documental para controvertir los hechos que Y-Nuina propuso como incontrovertidos, resulta insuficiente para desestimar la demanda presentada en su contra. Esto, pues, como discutiremos, la prueba documental incluida por Y-Nuina en su *Moción de sentencia sumaria* resulta insuficiente para establecer que esta no tuviera el control, ni a su cargo, el mantenimiento de la rampa donde fue alegado que sucedió la caída origen de la causa de acción.

Dispuesto lo anterior, notamos que los cuatro señalamientos de error alzados por el peticionario son susceptibles de discusión conjunta, así obraremos.

c.

La tesis principal de Y-Nuina para esgrimir que la causa de acción presentada en su contra debe ser desestimada se encuentra en su afirmación de que *no tenía el control ni el mantenimiento de la rampa en la que yacía la sustancia babosa que provocó la caída del damandante.[1]* Esto, por cuanto, según el mismo relato, en el contrato de arrendamiento que suscribió con Century Frozen Foods, (patrono del recurrido y arrendatario del inmueble), el mantenimiento de la referida rampa estaba bajo el control y jurisdicción del arrendatario, quien venía obligado a mantenerla en buen estado de limpieza y conservación. En definitiva, Y-Nuina sostiene ante nosotros, tal como lo hizo en su *Moción de sentencia sumaria[2]*, que, de haber alguna responsabilidad, sería atribuible a un tercero, el arrendatario-Century Frozen Foods, persona que asumió la responsabilidad contractual de mantener en buenas condiciones la rampa aludida.

Al argüir sobre lo anterior, Y-Nuina incluyó en su *Moción de sentencia sumaria* el contrato de arrendamiento que suscribió con Century Frozen Foods, con el cual pretendió fundamentar el hecho octavo que propuso como incontrovertido, que reza de la siguiente manera:

> El mantenimiento y limpieza de la propiedad donde ocurre la caída del demandante, incluyendo las aceras y demás áreas adyacentes, era obligación del arrendatario de la parte demandada aquí compareciente, Empresas Y-Nuina, Inc.[3]

A su vez, Y-Nuina pretendió establecer tal hecho propuesto citando el inciso noveno del contrato de arrendamiento provisto, según el cual:

> El Arrendatario se compromete y obliga a cumplir con todas las leyes, ordenanzas y reglamentos aplicables con respecto a su uso, Propiedad Arrendada o que constituya un estorbo o amenaza para terceras personas, o para la Arrendadora; mantendrá la Propiedad Arrendada,

---

[1] Ver, recurso de *certiorari*, págs. 17-18.
[2] Apéndice del recurso de *certiorari*, págs. 116-129.
[3] *Íd*, pág. 119.

incluyendo las aceras y demás áreas adyacentes a la misma, limpias y libre de todo desperdicio o basura y hará los arreglos necesarios para el recogido de basura de la Propiedad Arrendada, en forma regular y eficaz; mantendrá la Propiedad Arrendada en todo momento en buen estado de limpieza y conservación.[4]

Tal hecho propuesto en la *Moción de sentencia sumaria* fue acogido por el TPI en la *Resolución* recurrida, enumerado como hecho sexto, según fue sugerido por el peticionario, salvo por las expresiones *incluyendo las aceras y demás áreas adyacentes* y *aquí compareciente*, que resultaron eliminadas.[5]

Razona Y-Nuina que, acogido por el TPI el citado hecho propuesto como uno incontrovertido en la *Resolución* recurrida, el foro primario venía llamado a determinar que no se le podía atribuir responsabilidad por una omisión que correspondía asumir al arrendatario del inmueble, Century Frozen Foods, quien se obligó a mantener segura el área donde ocurrió el incidente, lo que debió ocasionar la desestimación de la causa en su contra. No estamos de acuerdo.

Lo cierto es que, examinado el contrato de arrendamiento sometido por Y-Nuina en integridad, notamos que las obligaciones acordadas por las partes, —Y-Nuina como arrendador y Century Frozen Foods, como arrendataria— respecto a quién de estas asumió la responsabilidad por mantener en buenas condiciones el inmueble arrendado, no se limitaron a la cláusula novena citada por el peticionario en su *Moción de sentencia sumaria*. Esto pues, en el inciso decimotercero del mismo contrato de arrendamiento, bajo el título *Mantenimiento y Reparaciones,* las partes también estipularon lo siguiente:

(A) Obligaciones del Arrendatario: Durante el término y cualquier renovación o extensión del mismo, el Arrendatario, a su cuenta y cargo, mantendrá la Propiedad Arrendada (excluyendo los elementos estructurales) en buen estado de mantenimiento y llevará a cabo los servicios de reparación no-estructurales que

---

[4] Apéndice del recurso de *certiorari*, pág. 138.
[5] Apéndice del recurso de *certiorari*, pág. 279.

sean necesario para mantener la propiedad Arrendada en el estado que le fue entregada, incluyendo sin limitación los servicios de reparación y mantenimiento necesarios de enseres, equipos, neveras y congeladores que forman parte de la Propiedad Arrendada, así como el reemplazo de bombillas de luz, mantenimiento de tuberías y conductos de agua, servicios de plomería y arreglo de instalaciones sanitarias. Las antes referidas reparaciones de carácter no-estructural deberán hacerse prontamente cuando sean necesarias. Todas las reparaciones deberán ser al menos de igual clase y calidad que el trabajo original. Si el Arrendatario incumple con su obligación de mantener la Propiedad Arrendada en buen estado de reparación, la Arrendadora, previa notificación escrita con treinta días de antelación, podrá, pero no estará obligada, a hacer dichas reparaciones a cuenta y cargo del Arrendatario, quien estará obligado a pagar a la Arrendadora inmediatamente al recibo de la cuenta. En la medida que el Arrendatario haga cualquier reemplazo de enseres, equipos, neveras, congeladores y sistemas que forman parte de la Propiedad Arrendada de cinco mil dólares ($5,000) o más por equipo o en cada instancia, dicho reemplazo pertenecerá al Arrendatario en o antes de la fecha de vencimiento de Término.

(B) **Obligaciones de la Arrendadora**:  Durante el Término y cualquier renovación o extensión del mismo, **la Arrendadora, a su cuenta y cargo, mantendrá el techo, las paredes, exteriores, la fundación y los demás elementos estructurales**, incluyendo los sistemas básicos tales como sistemas eléctricos, sistemas mecánicos, tuberías y ductos que sean internos o parte de la estructura de la Propiedad Arrendada en buen estado de mantenimiento **y llevará a cabo los servicios de reparación y reemplazo que sean necesarios para mantener los elementos estructurales de la Propiedad Arrendada en buenas condiciones**. Todas las reparaciones y reemplazos deberán ser al menos de igual clase y calidad que el trabajo original.

Las antes referidas reparaciones y reemplazos de los elementos estructurales de la Propiedad Arrendada deberán atenderse diligentemente dentro de los siguientes términos:

(i)     Reparaciones de emergencia. La Arrendadora deberá responder diligentemente dentro de las veinticuatro (24) horas de ocurrida la emergencia. Para propósitos de este Contrato, se entenderá que la reparación es de emergencia si el problema estructural resulta en la paralización de la producción del Arrendatario;

(ii)    Reparaciones requeridas por agencias reguladoras. La Arrendadora deberá responder y reparar dentro del término provisto por la agencia reguladora;

(iii)   Reparaciones ordinarias. La Arrendadora deberá hacer las reparaciones necesarias dentro de los

> sesenta (60) días a partir de la notificación escrita del Arrendatario a la Arrendadora; disponiéndose sin embargo que en el caso de que la reparación requiera más de sesenta (60) días para completarse, la Arrendadora deberá así notificarlo al Arrendatario y completar la misma diligentemente.
>
> Si la Arrendadora incumple con su obligación de mantener los elementos estructurales de la Propiedad Arrendada en buen estado de reparación, y no hace las reparaciones de los elementos estructurales requeridas dentro de los términos antes dispuestos luego de la notificación escrita del Arrendatario a la Arrendadora, el Arrendatario, podrá, pero no está obligado a pagar al Arrendatario el costo de la reparación verificada con recibos, el cual no podrá exceder el costo de mercado de reparaciones similares. No obstante lo anterior, el Arrendatario será responsable por cualquier daño estructural causado por su propia negligencia.[6]

(Énfasis provisto).

Contrario a lo propuesto por Y-Nuina en su *Moción de sentencia sumaria*, la sola lectura de las cláusulas del contrato de arrendamiento citadas **no** resultaba suficiente para establecer en quién recaía la responsabilidad por las alegaciones contenidas en la *Demanda*, específicamente respecto a la rampa en donde ocurrió la caída, si al arrendador o al arrendatario. Dicho de otra forma, de la prueba documental ante el TPI no resulta posible concluir, con el grado de certeza que permite dar lugar a una determinación sumaria, si las condiciones de peligrosidad alegadas referentes a la rampa resultan completamente atribuibles al arrendador o al arrendatario, como para librar a alguno de estos de responsabilidad en esta etapa de los procesos. Cabe preguntarse, ¿es la rampa parte de los *elementos estructurales* a cuyo mantenimiento se había obligado el arrendador, o una de las *áreas adyacentes* que el arrendatario estaba llamado a mantener limpia y libre de desperdicio o basura? La prueba documental con la que contamos no nos permite llegar a una determinación satisfactoria sobre este asunto.

---

[6] Apéndice del recurso de *certiorari*, págs. 140-141.

A la discusión de lo anterior se debe añadir la del contenido de la alegación séptima de la *Demanda*, que imputaba como condiciones de peligrosidad en la rampa el que no contara con barandas de seguridad, ni antideslizantes.[7] Los hechos propuestos como incontrovertidos por la peticionaria en su *Moción de sentencia sumaria* no aludieron, de manera alguna, a la alegada condición de peligrosidad que refería a la ausencia de barandas o antideslizantes en la rampa. Es decir, Y-Nuina no propuso como hecho incontrovertido que la rampa contara con tales medidas de seguridad (o alguna otra) al momento de la caída. Por tanto, de poder atribuirse una relación causal entre la alegada falta de tales medidas de seguridad en la rampa y la caída sufrida por el recurrido, (asunto que **no** estamos adjudicando), ¿correspondía al arrendatario o al arrendador haberlas provisto? Sobre lo mismo, merece auscultarse si, a pesar de que la rampa estuviera *babosa*, la existencia de barandas o antideslizantes hubiese evitado la caída del recurrido, en cuyo caso resulta medular dirimir sobre quién recaía tal obligación. De igual forma, también cabría plantearse si correspondía al arrendatario asumir la responsabilidad de mantener la rampa limpia (libre de la sustancia babosa), pero al arrendador proveerla de las medidas de seguridad señaladas.

Ciertamente, el tema al que aludimos en el párrafo que precede fue abordado por Y-Nuina en su *Moción de sentencia sumaria,* pero **no** como un hecho que se propusiera como incontrovertido, (la existencia de barandas y antideslizantes en la rampa), sino bajo la sección destinada a la discusión de derecho.[8] En específico, el peticionario sostuvo en la referida *Moción* que, contrario a lo alegado en la *Demanda*, el área donde ocurrió la caída sí contaba con pasamanos, pero el recurrido *no lo recordaba.[9]* Para tratar de sustentar esta afirmación, Y-Nuina citó

---

[7] Apéndice del recurso de *certiorari*, pág. 2.
[8] Apéndice del recurso de *certiorari*, págs. 123-128.
[9] *Íd.,* pág. 127.

segmentos de la deposición tomada al recurrido.[10] No obstante, basta una sola lectura a los segmentos de la deposición citada para percatarse que no resultan suficientes para establecer que la rampa estuviera desprovista de barandas o antideslizantes al momento de la caída, o de que sí las tuviera. Más allá de la citación de la deposición del recurrido, Y-Nuina no incluyó en la *Moción de sentencia sumaria* alguna otra documentación que sirviera para establecer como un hecho incontrovertido que la rampa contara con alguna medida de seguridad de las alegadas en la *Demanda* para evitar caídas.

Por cuanto la prueba documental incluida por la parte peticionaria para establecer los hechos medulares descritos no resultaba suficiente para que realizáramos un juicio final sobre estos, los juzgamos que permanecen en controversia. El criterio rector para dictar la sentencia sumariamente es, precisamente, la ausencia de hechos esenciales en controversia, debiéndose resolver en contra de la parte promovente, si de los documentos acompañados surgen dudas sobre la existencia de alguna controversia de hechos. *Rosado Reyes v. Global Healthcare Group*, supra, en la pág. 809.

En conclusión, el inciso sexto de las *Determinaciones de hechos* en la *Resolución* recurrida no está sustentado por la prueba documental presentada en la *Moción de sentencia sumaria*, por lo que ordenamos su exclusión. En su lugar, ordenamos incluir la siguiente determinación de hechos, bajo el número tres, (por lo que los demás hechos enumerados en la *Resolución* recurrida continuarán su orden a partir de este):

> 3. Empresas Y-Nuina, Inc. y Century Frozen Foods, LLC., suscribieron un contrato de arrendamiento sobre la propiedad aludida en el inciso que precede, compareciendo la primera como la Arrendadora y la segunda como el Arrendatario. De las cláusulas contenidas en dicho acuerdo contractual surgen obligaciones para cada una de estas sobre el referido inmueble, en términos de su mantenimiento.

---

[10] *Íd.,* págs. 127 y 128.

Los siguientes hechos permanecen en controversia:

1. Si la rampa donde ocurrió la caída contaba con alguna medida de seguridad para sus usuarios en caso de lluvia o estar mojada. Qué medidas de seguridad le corresponde asumir a la parte responsable de la rampa.

2. Si la caída fue el resultado exclusivo de la sustancia babosa descrita por el demandante o interfirieron otros factores que pudieran ser atribuibles a los demandados.

3. Si resultaba previsible que la rampa se ensuciara con la sustancia babosa descrita.

4. A quién de los demandados, Empresas Y-Nuina Inc. o Century Frozen Foods LLC., correspondía la responsabilidad de mantener limpia el área de la rampa, o mantener esta como área segura. ¿Es la rampa un *elemento estructural*, según este es concebido en el contrato de arrendamiento suscrito entre los demandados?

**IV. Parte dispositiva**

Por los fundamentos expuestos, procede que se modifique la *Resolución* recurrida en los términos antes discutidos. Así modificada, confirmamos la *Resolución* recurrida. En consecuencia, ordenamos la devolución del caso al Tribunal de Primera Instancia para que continúe con los procedimientos, en armonía con lo aquí establecido.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones